RIEMER & ASSOCIATES LLC
Attorneys for Plaintiff
Office and Post Office Address
60 East 42nd Street, Suite 2430
New York, New York  10165
(212) 297-0700

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
MARK WINKLER,                                                                06 Civ. 13258 (SAS)

                           Plaintiff,                                PLAINTIFF'S
                                                                                         STATEMENT
           -against-                                                 PURSUANT TO
                                                                                         LOCAL RULE 56.1

METROPOLITAN LIFE INSURANCE COMPANY,

                           Defendant.
------------------------------------------------------------------X

        Plaintiff, by his attorneys, Riemer & Associates LLC, as and for a statement pursuant to Local Rule 56.1 contends that there is no genuine issue to be tried with respect to the following material facts as follows:

Procedural History

        1-115.  Winkler incorporates by reference herein the 56.1 Statement filed by Winkler in support of his motion for summary judgment in 03 CV 9656.

        116.   On or about December 5, 2005, plaintiff Mark Winkler ("Winkler") commenced an action against defendant MetLife Insurance Company ("MetLife") in the United States District Court, Southern District of New York, under docket number 03 CV 9656 (SAS)(AJP), seeking long term disability benefits.[1]

---

[1] *All citation references to ("Ex__") are to the exhibits annexed to the Affirmation of Scott M. Riemer dated July 5, 2007.  All citation references to ("R__") are to the exhibits that were annexed to Winkler's Remand Letter dated September 19, 2006 . See Ex. J*

117. On April 20, 2005, the United States District Court for the Southern District of New York granted summary judgment in favor of MetLife. *Winkler v. Metropolitan Life Ins. Co.*, 2005 U.S. Dist. LEXIS 6738 (S.D.N.Y. April 18, 2005).

118. On May 16, 2005, Winkler appealed to the United States Court of Appeals for the Second Circuit from the final judgment of the United States District Court for the Southern District of New York.

119. By order dated March 1, 2006, the Court of Appeals for the Second Circuit reversed the district court and remanded the case back to the District Court with instructions to remand the case to MetLife for further proceedings consistent with the Second Circuit's order. *Winkler v. Metropolitan Life Ins. Co.*, 2006 U.S. App. LEXIS 5447 (2d Cir. Mar. 1, 2006).

120. By order dated May 25, 2006, the District Court remanded the claim back to MetLife (the "Remand Order"). (Ex. D).

121. The Remand Order incorporated the timeframes and requirements specified in the letters of Allan M. Marcus, Esq. dated May 23 and 24, 2006. (Ex. D).

122. In the letter of Allan M. Marcus, Esq. dated May 24, 2006, MetLife agreed to be bound by the timeframes for determining claims as specified in 29 C.F.R. 2560.503-1(f)(3) and for determining appeals as specified in 29 C.F.R. 2560.503-1(i)(3). (Ex. D).

123. By letter dated September 19, 2006, Winkler submitted additional evidence in support of his claim in accordance with the order of the District Court and in accordance with the procedure agreed to by MetLife (the "Remand Letter"). (Ex. E).

124. Winkler's August 11, 2006 Remand Letter was received by MetLife on September 20, 2006, at approximately 9:30 a.m. (Ex. F).

125. At no time during the 45-day period specified in 29 C.F.R. 2560.503-1(f)(3) did MetLife furnish to Winkler or his attorneys a request for an extension specifying special circumstances requiring an extension of time. (Riemer Aff., par. 9).

126. In violation of the Department of Labor Regulations, the Remand Order and MetLife's agreement as specified in the letter dated May 24, 2006, MetLife has never issued a determination on Winkler's claim for long term benefits. (Riemer Aff. Par. 9).

127. On November 16, 2006, fifty-seven (57) days after MetLife's receipt of the Remand Letter, Winkler commenced an action against MetLife in the United States District Court, Southern District of New York, under docket number 06 CV 13258 (SAS), seeking long term disability benefits. (Ex. A).

128. On November 20, 2006, a courtesy copy of the Summons and Complaint was served on MetLife. (Ex. G).

129. By letter dated November 30, 2006, MetLife requested additional time to review Winkler's claim for long term disability benefits. (Ex. H).

130. MetLife's letter dated November 30, 2006 was sent to counsel for Winkler after the expiration of the 45-day period specified in 29 C.F.R. 2560.503-1(f)(3) and after the filing of the Complaint. (Riemer Aff., par. 9).

131. On January 26, 2007, MetLife filed an answer in this action. (Ex. B).

132. As of July 5, 2007, two hundred and eighty-eight (288) days since MetLife received the Remand Letter, MetLife still has not issued a decision upon remand.  (Riemer Aff., par. 9).

Additional Medical Evidence Submitted in Support of Winkler's Remand Letter dated September 19, 2006

133. Winkler submitted additional evidence enclosed with his Remand Letter dated September 19, 2006 from Dr. Leo Shea, III; Dr. Jack Almeleh; Judith N. Clark, MSW; Dr. Stephen M. Dillon; Dr. Edward Brettholz; the Social Security Administration; UNUMProvident Corporation; and Prudential Life Insurance Company of New Jersey.  (Ex. J, R1-268).

Dr. Leo Shea, III

134. Dr. Shea performed neuropsychological evaluations of Winkler on April 25, May 22, May 30, and June 6, 2006.  He opined "This cognitive decline was initiated by his diagnosis in 1991 and progressed rather imperceptibly until his reported exacerbation and significant decline in 2000-2001.  Co-worker reports confirm this by citing a decline in Mr. Winkler's cognitive functioning in 2000-2001."  (Ex. J, R1-15).

135. Dr. Shea opined that "given the slow and progressive nature of HIV and Winkler's cognitive decline consequent to his HIV sequelae rendered him unable to adequately attend to the full-time responsibilities of any job significantly prior to January 1, 2004, and most likely prior to the date he left Jack Morton, Inc."  (Ex. J, R1-R15).

136. Dr. Shea opined that "No amount of remediation however could restore his cognitive capabilities to the levels needed to return to his profession or any other full time occupation."  (Ex. J, R11).

Dr. Jack Almeleh

137.     In a report dated August 21, 2006, Dr. Almeleh references Winkler's first session of November 8, 2001 wherein he notes that Winkler was "severely depressed as result of his life threatening illness."  (Ex. J, R26-27).

138.     Dr. Almeleh opined that "It was obvious that Mr. Winkler was not capable of working."  (Ex. J, R26-27).

139.     A Psychiatric Assessment Form dated March 26, 2004 completed by Dr. Almeleh noted Winkler's "concentration and memory were very poor."  (Ex. J, R28-38).

140.     Dr. Almeleh opined Winkler "is unable to perform all occupational duties."  (Ex. J, R28-38).

141.     Dr. Almeleh opined Winkler "is not capable of participating in a vocational rehabilitation program at this time."  (Ex. J, R28-38).

142.     In a report dated May 22, 2002, Dr. Almeleh noted that Winkler was first treated by him for an episode of depression on November 8, 2001 wherein he opined "patient has severe psychomotor retardation and very poor concentration and memory and cannot perform any of the duties of his occupation at the time of his disability."  (Ex. J, R28-38).

143.     In addition, Dr. Almeleh submitted office notes which indicate that he saw Winkler on a weekly basis from the periods of November 8, 2001 through January 14, 2004 which confirmed that Winkler was disabled.  (Ex. J, R39-60).

### Judith M. Clark, MSW

144.     Judith M. Clark, Winkler's Social Worker, submitted office notes from the period of June 2001 through October 2001 indicating Winkler's increasing symptoms of depression and problems at work.  (Ex. J, R61-64).

### Dr. Stephen M. Dillon

145.     Dr. Stephen M. Dillon, Winkler's internist, submitted his treatment notes from January 31, 2001 through October 31, 2001 indicating that Winkler suffered from major depression, extreme fatigue and cannot function in his present job.  (Ex. J, R200-205).

146.     Dr. Dillon submitted a report dated August 10, 2006 wherein he opined that Winkler's fatigue has been "profound and progressive over the years, becoming disabling in early 2004."  (Ex. J, R65).

### Dr. Edward M. Brettholtz

147.     In his Procedure Report, Dr. Brettholtz indicated that starting in the winter and spring of 2001, Winkler experienced a change in bowel habits that may have been related to his HIV medications.  (Ex. J, R231-234).

148.      Dr. Brettholtz concluded that the change in Winkler's bowel movements was significant enough to warrant a colonoscopy to rule out cancer.  (Ex. J, R231-234).

Social Security Administration

149.	The Social Security Administration found Winkler to be disabled as of October 26, 2001.  (Ex. J, R235).

150.	Winkler inaccurately put down October 26, 2001 as his last day of work with Jack Morton Company.  (Ex. J, R236-268).

UNUMProvident Corporation

151.	UNUMProvident Corporation found Winkler to be disabled under the terms of its individual policy as of October 26, 2001.  (Ex. J, R269-272).

152.	Winkler inaccurately put down October 26, 2001 as his last day of work with Jack Morton Company.  (Ex. J, R269-272).

Prudential Life Insurance Company of New Jersey

153.	Prudential Life Insurance Company of New Jersey waived Winkler's semi-annual life insurance premiums on account of his disability commencing with his premium due on December 16, 2001.  (Ex. J, R273).

Dated:	New York, New York
	July 5, 2007

						RIEMER & ASSOCIATES LLC
						Attorneys for Plaintiff
						60 East 42nd Street, Suite 2430
						New York, New York 10165
						(212) 297-0700



						By:_____/s/_____
						    Scott M. Riemer (SR5005)